PATRICK J. McARDLE, Respondent, v. GERMAN ALLIANCE
INSURANCE COMPANY, Appellant, Impleaded with Another.

1. INSURANCE — WAIVER OF CLAUSE IN POLICY LIMITING TIME FOR
COMMENCEMENT OF ACTION THEREON. Where in an action by the owner
of certain lands against an insurance company and his tenant, to recover
the amount of his interest in insurance moneys arising from the destruc-
tion by fire of an ice house which had been erected thereon by the tenant,
it appears that the policy insuring the tenant against loss had a clause
therein that the loss, if any, should be payable to the plaintiff as his inter-
est might appear, and that after due proof of loss the insurance company
sent to its agent, in payment therefor, its draft payable to the plaintiff
and to the tenant, and that the agent took the draft to the plaintiff and
asked him to indorse it, stating that he would procure the tenant's indorse-
ment and divide the proceeds between them, with which request the plain-
tiff refused to comply, but, claiming the whole amount, told the agent that
the insurance company might hold it for his account, to which the agent
replied, "There is no use holding this money because neither one of you
can use this draft and neither one of you can get it until both of you sign
it," and, upon the plaintiff's again refusing to take less than the whole

amount, again replied that if plaintiff " did not sign he would hold the check or send it back to the company, he did not know which and that neither would get the money," and where subsequently the insurance company, without the knowledge of the plaintiff, paid the amount of the loss to the tenant, and nearly four years elapsed before the commencement of this action, such conversation is insufficient to authorize a finding of a waiver by the insurance company of a clause in the policy providing that no suit or action should be maintained thereon, unless brought within twelve months next after the fire, nor is there anything therein to warrant the belief, on the part of the plaintiff, that the insurance moneys would be held as a fund for the payment of the loss pending the adjustment of the dispute between himself and his tenant.

2. SAME — LACK OF KNOWLEDGE OF PAYMENT OF LOSS TO OTHER PARTY IN INTEREST NO EXCUSE FOR DELAY IN COMMENCEMENT OF ACTION — DRAFT HAS NO VALIDITY UNTIL DELIVERED. A contention that the plaintiff did not learn of the payment of the money to the tenant until the time of the commencement of the action is not available as an excuse for the delay in bringing it, since the payment to the tenant in no way affected his rights and gave him no new cause of action; nor is the contention that by the issue of its draft the insurance company created a fund for the payment of the loss and created a new liability on its part well founded, since the draft had no validity or force until it was delivered, and when the plaintiff refused to accept it the situation was the same as if it had not been drawn.

*McArdle* v. *German Alliance Ins. Co.*, 98 App. Div. 594, reversed.

(Argued December 13, 1905; decided January 9, 1906.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered December 1, 1904, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Robert E. Whalen* for appellant. The sole question presented upon this appeal is whether upon the facts found by the trial court its conclusions of law are correct. (Code Civ. Pro. § 1338; *Spence* v. *Ham*, 163 N. Y. 220; *Clason* v. *Baldwin*, 152 N. Y. 204; *Smith* v. *Weston*, 159 N. Y. 194; *Westervelt* v. *Phelps*, 171 N. Y. 212; *Volkommer* v. *Cody*, 177 N. Y. 124; *N. P. Assn.* v. *Cumming*, 170 N. Y. 315;

24

*Petrie* v. *Hamilton College,* 158 N. Y. 458 ; *Schultze* v. *Goodstein,* 180 N. Y. 248.) The decision of the trial court contains no finding of fact which would support a conclusion of law that the defendant has waived the defense of the twelve months' limitation clause. (*Kiernan* v. *D., etc., Ins. Co.,* 150 N. Y. 190 ; *Titus* v. *G. F. Ins. Co.,* 81 N. Y. 410 ; *Prentice* v. *K. L. Ins. Co.,* 77 N. Y. 483 ; *Goodwin* v. *M. M. L. Ins. Co.,* 73 N. Y. 480 ; *Robertson* v. *M. L. Ins. Co.,* 88 N. Y. 541 ; *Weed* v. *L. & L. F. Ins. Co.,* 116 N. Y. 106, 118 ; *Ronald* v. *M. R. F. L. Assn.,* 132 N. Y. 378 ; *Devens* v. *M. & F. Ins. Co.,* 83 N. Y. 168 ; *Sullivan* v. *P. Ins. Co.,* 172 N. Y. 482 ; *Allen* v. *D., etc., Ins. Co.,* 95 App. Div. 86.) The decision of the trial court contains no finding of fact which would support a conclusion of law that the defendant is estopped to assert the defense of the twelve months' limitation clause. (*Shapley* v. *Abbott,* 42 N. Y. 443 ; *Thompson* v. *Simpson,* 128 N. Y. 270 ; *Brant* v. *V., etc., Co.,* 93 U. S. 326 ; *Pratt* v. *Ano,* 7 App. Div. 494 ; *Hollins* v. *Hubbard,* 91 Hun, 375 ; *White* v. *Ashton,* 51 N. Y. 280 ; *G., etc., Co.* v. *L. & L. & G. Ins. Co.,* 159 N. Y. 418.) The principles of neither waiver nor estoppel being available to the plaintiff, the twelve months' limitation clause is a complete defense to this action. (*Ripley* v. *Æ. Ins. Co.,* 30 N. Y. 136 ; *Arthur* v. *H. F. Ins. Co.,* 78 N. Y. 462 ; *G., etc., Co.* v. *L. & L. & G. Ins. Co.,* 159 N. Y. 418 ; *Armstrong* v. *A. Ins. Co.,* 130 N. Y. 560.)

*Franklin M. Danaher* and *George T. Kelly* for respondent. An insurance company can by its conduct and declarations not only waive the limitations placed by itself in the policy for its own protection, but can also defeat it by conduct which will create an estoppel. (*Walsh* v. *M. L. Ins. Co.,* 105 App. Div. 191 ; *Williams* v. *G. Ins. Co.,* 90 App. Div. 413 ; *Ames* v. *N. Y. Ins. Co.,* 14 N. Y. 264 ; *Mayor etc., of N. Y.* v. *Hamilton Fire Ins. Co.,* 39 N. Y. 46 ; *Sullivan* v. *P. Ins. Co.,* 172 N. Y. 482 ; *Nat. Ins. Co.* v. *Brown,* 128 Penn. St. 386 ; *Coursin* v. *P. Ins. Co.,* 46 Penn. St. 323 ; *Bonnert* v. *Ins. Co.,* 129 Penn. St. 558 ; *People* v. *L. Ins. Co.,* 2 T. &

C. 268 ; *Ripley* v. *Æ. Ins. Co.*, 29 Barb. 552.) When the defendant insurance company notified plaintiff that it would hold the draft and that neither he nor White would get the money on it or on the policy until plaintiff indorsed the draft, signed a receipt in full and accepted $1,000 in settlement of his claim for rent against White, it made a valid waiver of the limitation clause in the policy and could not thereafter enforce the same without reasonable notice of its intention to change its position in the matter so that plaintiff could protect himself in the premises. (*Barnum* v. *M. F. Ins. Co.*, 97 N. Y. 199 ; *Armstrong* v. *A. Ins. Co.*, 130 N. Y. 565 ; *Toplitz* v. *Bauer*, 161 N. Y. 324 ; *Robinson* v. *M. Ins. Co.*, 1 App. Div. 271 ; *Dougherty* v. *M. Ins. Co.*, 3 App. Div. 316 ; *Austen* v. *N. Ins. Co.*, 16 App. Div. 86 ; *Wagner* v. *M. L. Ins. Co.*, 17 App. Div. 13.) When the insurance company adjusted the loss at $2,000, and issued its draft for that amount in payment thereof, it gave to all parties interested notice of its intention to pay without suit and cannot now refuse to pay plaintiff after the twelve months' limitation has expired, by claiming that the provision as to the time of bringing suit has not been complied with. (Joyce on Insurance, § 3207 ; *Little* v. *P. Ins. Co.*, 123 Mass. 380 ; 63 Tex. 399 ; *Ames Case*, 14 N. Y. 266 ; *Thompson* v. *P. Ins. Co.*, 136 U. S. 287 ; 93 Ill. 271 ; 44 N. J. L. 485.) The defendant insurance company, after the loss, adjusted the claim therefor and issued its draft in payment thereof, which draft it agreed to hold until plaintiff indorsed it and accepted $1,000 in satisfaction of his claim. The claim for the loss under the policy thereby became liquidated and changed into a different form, viz., the promise of the company to hold the draft, and on that agreement, which the company broke, and to which the limitation clause in the policy is not available as a defense, we are entitled to recover in this action. (*Wright* v. *Hooker*, 10 N. Y. 51 ; *Conaughty* v. *Nichols*, 42 N. Y. 83 ; *Arnot* v. *E. R. Co.*, 67 N. Y. 315 ; 77 N. Y. 368 ; Code Civ. Pro. § 1207 ; *Rogers* v. *N. Y. & T. L. Co.*, 134 N. Y. 197 ; Joyce on Insurance, §§ 3208, 3220 ; *G. F. Ins. Co.* v. *Carron*, 21 Ill. App. 631 ; *F. M. Ins. Co.* v. *Chestnut*, 50 Ill. 112.)

The facts found amply establish that the limitation clause in the policy, if not abrogated, was expressly waived by the defendant insurance company. (*Sergeant* v. *L. Ins. Co.*, 155 N. Y. 355; *Matter of St. P. G. Ins. Co.*, 58 Minn. 163; *Kiernan* v. *D. C. M. Ins. Co.*, 150 N. Y. 195; *G. E. Co.* v. *L. & L. & G. Ins. Co.*, 159 N. Y. 418.) The facts found clearly constitute an estoppel against the defendant insurance company setting up the limitation clause in the policy as a defense to plaintiff's action. (*Kiernan* v. *Ins. Co.*, 150 N. Y. 194; *Sullivan* v. *Ins. Co.*, 172 N. Y. 482; *Trustees* v. *Smith*, 118 N. Y. 641; *N. Y. R. Co.* v. *Rothsay*, 107 N. Y. 310.)

Cullen, Ch. J. On January 3rd, 1899, the plaintiff was the owner of certain lands in the county of Albany on which his tenant, one White, had erected an ice house. On that day the defendant issued a policy insuring White against loss or damage to said ice house by fire in the sum of $2,000, loss if any payable to the plaintiff as his interest might appear. The policy was in the standard form prescribed by the insurance department and provided that no suit or action should be maintained thereon unless brought within twelve months next after the fire. On May 27th of that year the ice house was totally destroyed and due notice thereof and proper proofs of loss were given the appellant. In payment of such loss the appellant, in October of such year, sent its draft for $2,000, payable to the order of the plaintiff and said White to its agent in Albany. The agent took the draft to the plaintiff, asked him to indorse it and said that he, the agent, would also get White to indorse it and from the proceeds thereof the plaintiff should have the sum of a thousand dollars and White the remainder. The plaintiff refused to indorse the draft or to accept the sum of a thousand dollars on account thereof, claiming that he was entitled to receive the whole amount to apply on the rent. Then, as found by the trial court, the plaintiff said: "Let them (the insurance company) hold it if they don't; let them hold it for me for my account, because

it is going to apply upon this rent; I will take nothing less than $2,000." To this the agent replied : " All right, but I think you are foolish because here is the money and I would advise you to settle it up and take $1,000 and let Mr. White take $1,000. There is no use holding this money because neither one of you can use this draft and neither one of you can get it until both of you sign it, indorse it and sign the receipt." The plaintiff then said that he would take nothing less than the $2,000 and the agent replied that "if plaintiff did not sign he would hold the check or send it back to the company, he did not know which and that neither would get the money." Thereupon the agent took away the draft and this ended the negotiation between him and the plaintiff. Subsequently the appellant, without the knowledge of the plaintiff, paid the amount of the loss to White on receiving from him a bond of indemnity. In March, 1903, the plaintiff instituted this action against White (upon whose death his executors were substituted in his place) and the appellant to recover the amount of plaintiff's interest in the insurance moneys, being the sum of $1,225. The trial court ordered judgment for the claim against White's executors, but dismissed the complaint as against the appellant. The plaintiff appealed from the judgment in favor of the insurance company.

As the order of the Appellate Division is silent as to the grounds for reversal, we must, under section 1338 of the Code, assume that it was based upon errors of law, the facts as found by the trial court being undisturbed. (*National Protective Assn.* v. *Cumming*, 170 N. Y. 315.) There are no exceptions to any rulings of the court on the admission or rejection of evidence, and the only question presented to us is whether the facts as found by the trial court justified its conclusion of law that the complaint should be dismissed as against the appellant insurance company. Concededly, the action was not instituted until nearly four years after the fire and hence the condition of the policy that suit must be brought within a year after the fire was a bar to its maintenance, unless that condition was waived by the appellant or, by its conduct, it

became estopped from enforcing the condition.     The trial court did not find as a fact any waiver or estoppel on the part of the company.   All it found was the conversation between the plaintiff and the appellant's agent which has been narrated. Therefore, to sustain the order appealed from it is not sufficient to show that as an inference of fact from this conversation the court might have found a waiver or estoppel.   It is necessary to go further and to successfully maintain that the conversation conclusively established a waiver or estoppel. We are of opinion that the transaction between the plaintiff and the appellant's agent was insufficient to authorize a finding of waiver, much less to conclusively prove it.     We shall not enter into any discussion as to the distinction in principle between waiver and estoppel and we will concede that the conduct of an insurance company may be such as to preclude the company from insisting on the time limit for bringing suit provided by the policy.     We find, however, nothing of that character in the present case.     The learned judge who wrote for the majority of the Appellate Division thought that the plaintiff might have understood and believed from what was said to him by the agent that the insurance moneys would be held as a fund for the payment of the loss, pending the adjustment of the dispute between White and himself.     Waiving the point that the trial court has not found either that the plaintiff did so understand, or that in reliance on such understanding he refrained from bringing his suit, it seems to us that there was nothing in the conversation that justified such a belief on the plaintiff's part.     When the plaintiff, after his refusal to indorse the draft and accept the sum of $1,000, told the agent to hold the draft on his account, he was explicitly told that there was no use in holding it; that neither could get it unless they both indorsed it; that he did not know whether he would hold it or send it back to the company, and that neither the plaintiff nor White would get the money.     It is difficult to see how this seemingly explicit declaration by the agent, that neither would get the money and that he might send the draft back to the company, can

be construed into a promise to hold the draft pending the settlement of the dispute between the plaintiff and White, or how the plaintiff could have misunderstood its import. Nor is there anything to show that the plaintiff, by reason of this negotiation with the agent, forbore the institution of his suit. At the time the plaintiff refused the draft there was a term of seven months left in which he might have brought an action. It does not appear that subsequent to that time he did anything to adjust the dispute between White and himself, but waited till the expiration of nearly four years from the time of the fire before he commenced this action. It is urged by the learned counsel for the respondent that it was not until that time that he learned that the money had been paid over to White. The payment to White, however, could not in any way affect the plaintiff's rights nor give him any new cause of action. His complaint was not that the money was paid to White, but that it was not paid to him. Nor is the other position taken by the counsel, that by the issue of its draft the appellant created a fund for the payment of the loss and created a new liability on its part, well founded. The draft had no validity or force until it was delivered and when the plaintiff refused to accept it the situation was the same as if it had not been drawn. Moreover, a check or draft drawn in the ordinary form does not operate as an equitable assignment of the funds of the drawer in the hands of the drawee (*Attorney-General* v. *Continental Life Ins. Co.*, 71 N. Y. 325), and cannot create a fund. If the plaintiff had accepted the draft, then his rights against the appellant would have been the same as those against any maker of a negotiable instrument, but until acceptance or delivery the draft created no new liability on the part of the company.

The order appealed from should be reversed and the judgment of the Trial Term affirmed, with costs.

Gray, Bartlett, Haight, Vann and Werner, JJ., concur; O'Brien, J., not voting.

Ordered accordingly.